UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUVENTINO RODARTE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALAMEDA COUNTY, et al.,<br><br>　　　　Defendants. | Case No.  14-cv-00468-KAW<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER BRIEF**<br><br>Re: Dkt. No. 31 |

　　　　The parties in the above-captioned case filed a joint discovery letter brief concerning seven subpoenas that seek a variety of information, including information about the plaintiff's immigration status.  For the reasons set forth below, the subpoenas are quashed.

## I.　　BACKGROUND

### A.　　Factual background[1]

　　　　Juventino Rodarte ("Plaintiff") filed his complaint against Alameda County, Gregory J. Ahern ("Ahern"), Raymond P. Kelly ("Kelly"), and Derek D. Thoms ("Thoms," collectively, "Defendants") on January 30, 2014.  (Compl., Dkt. No. 1.)  He asserts causes of action for violations of his Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, a claim for municipal and supervisory liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and various state law claims, including assault and battery.  (*Id.* ¶¶ 45-94.)

　　　　These claims arise from events that occurred on March 23, 2013.  (*Id.* ¶ 9.)  Daniel Furtado ("Furtado") noticed a motion light turn on outside his secured apartment complex, the same apartment complex where Plaintiff resides.  (*Id.* ¶ 10.)  Furtado did not observe anything outside,

---

[1] This background is based on the factual allegations in Plaintiff's complaint.

1   but he called the police. (*Id.* ¶ 11.) Thoms and his partner, T. Nelson ("Nelson") responded to the
2   call at approximately 2:21 a.m. (*Id.* ¶ 12.) They had a K-9 with them. (*Id.* ¶ 12.) Kelly and
3   another deputy, C. Kolos ("Kolos") also responded to the call. *(Id.)*

The deputies entered the secured apartment complex, cleared the parking garage then cleared the first floor. (*Id.* ¶¶ 13, 14.) They proceeded to the second floor of the complex, where they encountered Plaintiff, who was at his apartment door with his keys in hand. (*Id.* ¶¶ 15, 16.) Kelly told Thoms that Plaintiff had a metal object in his hands, and they commanded the K-9 to "apprehend" Plaintiff. (*Id.* ¶¶ 20, 21.) The K-9 bit Plaintiff on his left calf, and Plaintiff lost consciousness. (*Id.* ¶¶ 23, 24.) Nelson handcuffed Plaintiff, and Thoms ordered the K-9 to release her bite once Plaintiff was in handcuffs. (*Id.* ¶¶ 25, 26.) While Plaintiff was in custody, Thoms identified the metal object in Plaintiff's hands as a set of house keys. (*Id.* ¶ 27.)

Paramedics Plus transported Plaintiff to Eden Medical Center. (*Id.* ¶ 21.) When Plaintiff regained consciousness, he was handcuffed to a hospital bed. (*Id.* ¶ 32.) Thoms and another deputy, A. Holmes ("Holmes") would not release Plaintiff to allow him to make a phone call until he signed a confession Thoms had prepared. (*Id.* ¶ 33.) Thoms placed Plaintiff under arrest and "had Deputy Homes cite [Plaintiff] for PC 148(a)(1)-obstructing a peace officer." (*Id.* ¶ 34.)

**B.    The subpoenas**

Defendants in this case have propounded seven identical subpoenas on the employers Plaintiff identified in his initial disclosures. (Joint Ltr., Dkt. No. 31. at 1.) The subpoenas command production of:

> All records, including all electronically stored information, relating to employment, including but not limited to:
> A. Personnel records including employment application/resume, performance evaluations, records of disciplinary action, disability claims, workers compensation claims, and medical records pertaining to the individual's employment.
> B. Payroll records including salary, wages, commissions or other remuneration paid or held by the employer, W-2 forms, time sheets and records of time off the job and reasons therefore, including sick leave and vacation.
> All records, including all electronically stored information, relating to insurance, including but not limited to insurance claim information, medical insurance records, medical bills paid, medical records and medical insurance

2

> coverage.
>
> Any and all records pertaining to Juventino Rodarte (DOB . . . ), related to any employment by you, including without limitation employment applications, resumes, references, proof of citizenship/employability in the United States, W-2s, dates of employment, pay stubs or other records of payment, health insurance, performance evaluations and reviews, illnesses, vacation time, sick time, worker's compensation claims, job duties, job descriptions, types of work performed, skills, union affiliation, hours worked, wage or salary information, for the entire period of his employment with you, including to the present if he is presently employed by you.

(Joint Ltr., Ex. A.)  Plaintiff seeks an order quashing the seven employment subpoenas.  *(Id.)*  He argues that Plaintiff's immigration status is not relevant to the subject matter of this case, and that the subpoenas are overbroad and oppressive and constitute an undue burden.  (Joint Ltr. at 3.)  Defendants contend that information regarding Plaintiff's ability to be lawfully employed in the United States is relevant to his prayer for damages based on diminished earning capacity or future lost earnings.  (*Id.* at 3, 6.)  Defendants maintain that "[t]here is no issue of depriving [P]laintiff of a remedy.  Rather, [D]efendants seek information relevant to how that remedy lawfully may be measured."  (*Id.* at 9.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery propounded by subpoena.  The scope of discovery that can be requested through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b).  Fed. R. Civ. P. 45 advisory committee note ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any party a request within the scope of Rule 26(b)."). Rule 26(b) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(B)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

A party may move to quash or modify a subpoena under Rule 45(d)(3)(A).  The rule provides that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; (iv) or subjects a person to undue burden.  *Id.*  The party

3

1  moving to quash a subpoena bears the burden of persuasion, but the party issuing the subpoena

2  must demonstrate that the discovery sought is relevant. *Personal Audio LLC v. Togic Entm't*, No.

3  14-mc-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014).

### III. DISCUSSION

As a preliminary matter, the Court notes that, at least in Title VII civil rights cases, discovery regarding a plaintiff's immigration status is generally prohibited, especially in the early stages of litigation. *See, e.g., Rivera v. NIBCO*, Inc., 364 F.3d 1057, 1069-70 (9th Cir. 2004). Two reasons justify this approach. First, the immigration status of the plaintiff is not usually relevant to the issue of liability. I*d.* at 1069-70 ("The information NIBO seeks is not relevant to determining whether it has violated Title VII."). Second, permitting parties to use the discovery process to inquire into immigration status would have an unacceptable chilling effect on the bringing of civil rights actions, which would result in "countless acts of illegal and reprehensible conduct" going unreported. *Id.* at 1065.

In this § 1983 case, Plaintiff has not advanced any argument that these concerns are implicated here. Rather, his sole argument is that "discovery into his immigration status is unrelated to his present claim arising out of tort, and there is no particularize[d] suspicion based on his current and past employment for immigration status to be relevant." (Joint Ltr. at 8-9) He relies on *Clemente v. State*, 40 Cal. 3d 202 (1985) to support his position.[2]

---

[2] Plaintiff also relies on SB 1818, codified at California Civil Code section 3339, California Government Code section 7285, and California Labor Code section 1171.5. Section 3339 provides, in pertinent part:

> For purposes of enforcing state labor, employment, civil rights, and employee housing laws, a person's immigration status is irrelevant to the issue of liability, and in proceedings or discovery undertaken to enforce those state laws no inquiry shall be permitted into a person's immigration status except where the person seeking to make this inquiry has shown by clear and convincing evidence that this inquiry is necessary in order to comply with federal immigration law.

Because the Court concludes that permitting discovery into Plaintiff's immigration status, at this time, is improper for other reasons, the Court declines to address whether California Civil Code section 3339's prohibition on discovery into such matters in cases involving state labor, employment, civil rights, and employee housing laws precludes the discovery at issue in this case. The Court notes, however, that the statute does not appear to operate as a bar to that kind of discovery with respect to claims based on federal laws. Furthermore, to the extent that Plaintiff believes the California Supreme Court's anticipated decision in *Salas v. Sierra Chemical Co.* may have some bearing on the discovery at issue here, he is free to advance that argument at a later

4

In *Clemente*, the plaintiff suffered severe injuries when he was struck by a motorcyclist. 40 Cal. 3d at 209. The motorcyclist was never apprehended, and the plaintiff sued the State of California and the Highway Patrol Officer for negligence. *Id.* The plaintiff alleged that the officer was negligent in failing to ascertain the identity of the motorcyclist, whose information the officer did not obtain before he left the scene. *Id.* at 210. The plaintiff prevailed at trial and obtained a judgment of $2,150,000.21. *Id.* at 209. One of the issues raised on appeal was whether the trial court improperly excluded testimony from the plaintiff's wife regarding his citizenship. *Id.* at 221. The defendants argued that such evidence was relevant to the plaintiff's claim for future loss of earnings. *Id.* The court concluded:

> We cannot say that in the instant case the trial court erred in refusing to permit questioning of plaintiff's wife regarding her husband's citizenship. Plaintiff had been gainfully employed in this country prior to his two accidents, there was no evidence that he had any intention of leaving this country and the speculation that he might at some point be deported was so remote as to make the issue of citizenship irrelevant to the damages question. The trial court properly concluded that the plaintiff's wife was probably incompetent to testify to her husband's legal status in this country and that such testimony, even if marginally relevant, was highly prejudicial.

*Id.*

Defendants claim that Plaintiff misrepresents the holding in *Clemente*. (Joint Ltr. at 9.) They assert that *Clemente* does not stand for the proposition that discovery on employability in the United Stated is barred.[3] (*Id.* at 10.) They maintain that Plaintiff's immigration status is relevant to his claim for future lost income and that precluding such discovery would prejudice them. To that end, Defendants argue that Plaintiff's claim that there is no evidence or particularized suspicion that plaintiff is not legally entitled to work in this country is entirely self-serving. *(Id.)* According to Defendants, their attorney asked Plaintiff's counsel whether Plaintiff "was legally

---

date.

[3] Defendants also contend that *Clemente* did not overrule *Metalworking Machinery, Inc. v. Superior Court of Los Angeles*, 69 Cal. App. 3d 791 (1977). Even so, the court in *Metalworking Machinery, Inc.*, summarily concluded that discovery requests for the plaintiff's immigration status were "clearly relevant to the subject matter of the action as framed by the pleadings, and . . . [were] likely to lead to the discovery of admissible evidence." Thus, Defendants' reliance on the case is misplaced, and the *Clemente* court's treatment of the case is irrelevant.

5

entitled to work in the U.S." and "Plaintiff's counsel would not respond." (*Id.* at 9, 10.)

In support of their position, Defendants rely on three cases, *Heiner v. Kmart Corp*, 84 Cal. App. 4th 335, 345 (2000),[4] *Rodriguez v. Kline*, 186 Cal. App. 3d 1145 (1986), and *Romero v. Cal. Highway Patrol*, No. C05-03014 MJJ, 2007 U.S. Dist. LEXIS 14517 (N.D. Cal. Feb. 14, 2007). In *Rodriguez*, the issue before the court of appeal was "whether a person who is within this country illegally is entitled to be compensated for his personal injuries based upon his projected earning capacity in (1) the United States or (2) the country of his lawful citizenship." 186 Cal. App. 3d at 1157. In that case, the plaintiff had conceded that he was an illegal alien. *Id.* 1151 n.1. The court concluded that when the citizenship of a plaintiff who prays for recovery of lost future earnings is challenged, the defendant will first have to produce proof that the plaintiff is an alien subject to deportation, and the plaintiff will have to bear the burden to show that that he has taken steps to correct the "deportable condition." *Id.* at 1149. The court noted that "[a] contrary rule, of course, would allow someone who is not lawfully available for future work in the United States to receive compensation to which he is not entitled." *Id.* (citation omitted).

In *Romero*, the court addressed a renewed motion to compel (1) responses to deposition questions regarding the plaintiff's immigration status, (2) enforcement of a subpoena *duces tecum* that sought information about the plaintiff's immigration status from his employer, and (3) responses to interrogatories regarding the plaintiff's plans to return to work in his country of origin. 2007 U.S. Dist. LEXIS 14517, at *2. The court had previously entertained a dispute regarding the same discovery, and in the order resolving that dispute, the court stated: "Should Plaintiff's § 1983 claim survive summary judgment, Defendant may, at that time, renew its Motion to Compel discovery regarding Plaintiff's immigration status." *Id.* (internal quotations and citation omitted.) In ruling on the renewed motion, the court determined that information about the plaintiff's immigration status was relevant to his claim for past and future lost wages. *Id.* It also found that because the trial in the case was to begin in a matter of weeks, the defendant's interest in obtaining the information outweighed the plaintiff's interest in non-disclosure of clearly relevant

---

[4] Defendants apparently rely on *Heiner* only because it cites *Rodriguez* with approval. For this reason, the Court does not discuss *Heiner* separately.

1 discovery.  *Id.* at *3.

2 The Court agrees that *Clemente* does not squarely prohibit all discovery on matters
3 concerning a plaintiff's immigration status.  *See* 40 Cal. 3d at 221.  *Rodriguez* lends support to
4 such a reading.[5]  *See* 186 Cal. App. 3d at 1149.  At this time, however, information about
5 Plaintiff's immigration status is, at best, marginally relevant to Plaintiff's claim for a specific type
6 of damages.  It is certainly not relevant to the issue of liability, and to the extent that the liability
7 issue is ultimately disposed of on a motion for summary judgment, any inquiry into Plaintiff's
8 immigration status would be unnecessary.  In this respect, at this stage in the case, the marginal
9 relevance of this information makes any burden imposed by the subpoenas undue.  *See, e.g.,*
10 *Rivera*, 364 F.3d at 1066 (concluding "that discovery of each plaintiff's immigration status
11 constitutes a substantial burden, both on the plaintiffs themselves and on the public interest in
12 enforcement of Title VII and FEHA").

13 For this reason, the Court adopts the approach set out in *Romero*.  If this case progresses
14 beyond the summary judgment stage, the parties may revisit the issue of Plaintiff's immigration
15 status.  *See* 2007 U.S. Dist. LEXIS 14517, at *2.  If, at that time, the parties are unable to resolve
16 the issue on their own, they may file another joint discovery letter.  In the interim, the seven
17 subpoenas Defendants propounded on Plaintiff's employers are quashed.

### IV. CONCLUSION

19 For the reasons set forth above, the subpoenas are quashed.  The parties shall serve a copy
20 of this order on each subpoenaed employer.

21 **IT IS SO ORDERED.**

22 Dated: June 18, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[5] As previously indicated, the Court declines to address whether SB 1818, as codified, overrules these authorities.

7